UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANDEL P. ROHRING,

        Plaintiff,

       v.                                                             **DECISION AND ORDER**
                                                                                       19-CV-6376S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

       1.      Plaintiff Randel P. Rohring brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.      Plaintiff protectively filed his applications with the Social Security Administration on September 14, 2015.  Plaintiff alleged disability beginning December 13, 2013, due to posttraumatic stress disorder ("PTSD"), anxiety disorder, affective disorder, hypertension, hypothyroidism, sleep apnea, and alcohol use.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

       3.      On February 13, 2018, ALJ Timothy Belford held a video hearing at which Plaintiff—self-represented—and Vocational Expert Larry Takki appeared and testified. (R.[1] at 49, 7-37.)  At the time of the hearing, Plaintiff was 43 years old on the alleged onset date, had a high school education, and worked as a forklift operator (semi-skilled work performed at medium exertional level), driver (unskilled work performed at medium),

---

[1]Citations to the underlying administrative record are designated as "R."

loader/unloader (semi-skilled work performed at heavy), caregiver (semi-skilled work performed at light), building maintenance repairperson (skilled work performed at medium), and lubricant technician (semi-skilled work performed at medium).  (R. at 58, 49, 57-58 nn.1-6.)  Plaintiff also suffered from PTSD from military service (Docket No. 9-1, Pl. Memo. at 15).

4. The ALJ considered the case *de novo* and, on June 28, 2018, issued a written decision denying Plaintiff's applications for benefits.  (R. at 48.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 13.)  Plaintiff filed a response on March 4, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

---

[2]The ALJ's June 28, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review, R. at 1.

2

Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled, 482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

>mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

    10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

    11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of December 13, 2013. (R. at 51.) At step two, the ALJ found that Plaintiff has the following severe impairment: PTSD; anxiety disorder; and

4

affective disorder. Id. at 52. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations: he is limited to simple, routine tasks, with only occasional decision-making and no more than occasional workplace changes; interaction with coworkers, supervisors, and the public would be limited to no more than occasional (R. at 53).

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 57-58.) At step five, the ALJ inquired from a vocational expert what occupations exist that a hypothetical claimant similar to Plaintiff could perform. The expert opined that this claimant could perform such occupations as yard worker (unskilled heavy exertion work), hand packer (unskilled medium exertion work), and dining room attendant (unskilled medium work). (R. at 58-59.) The ALJ thus concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 58-59.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 59.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ gave little weight to all of the medical opinion evidence and otherwise failed to explain the RFC (No. 9-1, Pl. Memo. at 1, 15-19). Plaintiff contends that the ALJ read (and rejected) the voluminous psychological record and made his own lay judgment and rendered an RFC without any reference to any medical opinion (id. at 16). The ALJ also failed to develop the record with evidence of a psychiatric hospitalization following plaintiff's suicide attempt, especially since plaintiff proceeded pro

se at the hearing (id. at 1, 19-21). Plaintiff contends that the ALJ significantly mischaracterized the record and remand thus is warranted (id. at 1, 21-25).

15. Defendant responds that the ALJ did consider the otherwise conclusory opinion from the Department of Veterans Affairs and concluded that Plaintiff still could work (No. 13-1, Def. Memo. at 9-13). Defendant argues that the record on Plaintiff's treatment following the suicide attempt in December 2014 was sufficient, despite Plaintiff arguing pro se, since the record includes Plaintiff's reporting his suicide attempt to treating psychiatrist, Dr. Matthew Tessena (R. at 335-38), thus the record for this hospitalization did not need supplementation (No. 13-1, Def. Memo. at 13-17). Defendant concludes that Plaintiff made a flawed evaluation of the evidence and the ALJ correctly determined that Plaintiff could resume work (No. 13-1, Def. Memo. at 17-21).

16. For the reasons that follow, Plaintiff's argument is in part **adopted**.

17. The ALJ has a duty to "adequately protect a pro se claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered,'" Cruz v. Sullivan, 912 F.2d 8, 11-12 (2d Cir. 1990) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)). The ALJ has a further duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," Gold v. Secretary of HEW, 463 F.2d 38, 43 (2d Cir. 1972). This Court then "must determine whether the ALJ 'adequately protect[ed] the rights of [a] pro se litigant by ensuring that all of the relevant facts [are] sufficiently developed and considered,'" Echevarria v. Secretary, HHS, 685 F.2d 751, 755 (2d Cir. 1982) (quoting Hankerson, supra, 636 F.2d at 895). Whether the ALJ met this duty to develop the pro se litigant's record is a threshold question before determination of whether the ALJ's conclusions are supported by substantial evidence,

Hooper v. Colvin, 199 F. Supp. 3d 796. 806 (S.D.N.Y. 2016). If the ALJ fails to develop the record, especially when a claimant is pro se, this Court must remand the case, Paredes v. Commissioner, No. 16CV810, 2017 U.S. Dist. LEXIS 76403, at *46 (S.D.N.Y. May 19, 2017) (Moses, Mag. J.); Hupp v. Commissioner, No. 17CV692, 2018 WL 3872153 (W.D.N.Y. Aug. 15, 2018) (Scott, Mag. J.).

18. Thus, an initial issue here is whether the ALJ properly developed the record for this pro se Plaintiff. With counsel, Plaintiff now argues that he proceeded pro se but was provided a CD-ROM of the medical record by the ALJ, but Plaintiff lacked a computer to access it (No. 9-1, Pl. Memo. at 19; R. at 11). Therefore, Plaintiff was unaware whether that record completely discussed his third suicide attempt hospitalization (No. 9-1, Pl. Memo. at 19) creating a gap in the record that the ALJ was obliged to assist Plaintiff in filling (id. at 20).

19. Defendant responds that this December 2014 hospitalization at the Clifton Springs Hospital was discussed at length in the record by Dr. Tessena (No. 13-1, at 15).

20. On December 29, 2014, Plaintiff had an appointment with Dr. Tessena and reported that he attempted suicide, taking various pills (R. at 335). Plaintiff attempted suicide on December 20 and was hospitalized from December 21-26, 2014 (id.). Dr. Tessena noted that Plaintiff no longer had suicidal ideation and felt less depressed since the attempt. (R. at 336). The ALJ reviewed this record and found that Plaintiff had a normal mental status examination and rated his depression as 2 on a 1-10 scale (with 10 as the worse) (R. at 336, 55).

21. The ALJ, however, did not mention this hospitalization and, as noted by Plaintiff (No. 9-1, Pl. Memo. at 21-22) mischaracterized the record by counting only two of Plaintiff's three suicide attempts (R. at 55-56).

22. Defendant dismisses this because the ALJ then diverged from the findings of Drs. Christine Ransom (R. at 543, 52-53) and S. Bhutwala (R. at 41, 52-53) in finding that Plaintiff had severe impairments of PTSD, anxiety disorder, and affective disorder, "resulting in significant, ongoing RFC limitations" (No. 13-1, Def. Memo. at 18). This evaluation, however, was at step two of the analysis and residual functional capacity assessment at steps three and four required more detailed assessment (R. at 53). The ALJ at step three gave limited weight to Dr. Ransom's opinion and to state agency consultant Dr. Bhutwala (R. at 57).

23. On December 15, 2015, Dr. Ransom evaluated Plaintiff and noted that he had three hospitalizations (twice in 2013 and once in 2014) (R. at 543). Dr. Ransom opined that Plaintiff would have mild difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, learning simple new tasks, performing complex tasks, relating adequately with others, and appropriately dealing with stress (R. at 545). She concluded that Plaintiff had mild psychiatric conditions that would not significantly interfere with his ability to function on a daily basis (R. at 546).

24. The ALJ, however, gave Dr. Ransom's opinion limited weight because it was based upon a single examination, that the overall weight of the medical record for over three years supported "the limitations outlined within the residual functional capacity"

(R. at 57). The ALJ also faulted that opinion for not adequately accounting for "the potential for symptom exacerbation in a higher stress or more complex environment than envisioned by the residual functional capacity" (R. at 57). This opinion rests upon the validity of the RFC, testing Dr. Ransom's opinion against it. The ALJ only noted two psychiatric hospitalizations 2013 (R. at 54-55) without mentioning the December 2014 hospitalization.

25. Dr. Bhutwala evaluated Plaintiff as state agency psychological consultant (R. at 41), concluding that Plaintiff's impairments of affective disorders, anxiety disorders, and alcohol and substance addiction disorders were not severe (id.). The ALJ gave this opinion limited weight because it was not necessarily "an accurate reflection of the claimant's functional limitations" (R. at 57) by also not adequately accounting for "symptom exacerbation in a higher stress or more complex environment than envisioned by the residual functional capacity" (R. at 57).

26. The ALJ critique of the consultative examiners that they failed to address how Plaintiff could have symptom exacerbation does not state the basis for that concern, given that it envisioned situations beyond the scope of the RFC and the ALJ has given limited weight to the other medical opinions in the record (see R. at 56-57). This conclusion could only arise from the ALJ making lay opinion from the raw medical and psychological data to reach this conclusion (see No. 9-1, Pl. Memo. at 16).

27. The ALJ made the threshold error of allowing Plaintiff to proceed representing himself but not ensuring that he had a chance to have meaningful review of the record. Once the ALJ learned from Plaintiff that he could not access the CD with the medical record, the matter should have been adjourned; rather, the ALJ proceeded,

holding that "since you haven't seen [the record contained on the CD], there's really nothing for you to object to, so I'm going to admit it." (R. at 11.) Although the record did not include December 2014 Clifton Springs suicide hospitalization, Plaintiff would have had an objection to the completeness of the record. Had he been afforded the opportunity to obtain representation (minimally, someone with access to a CD-ROM drive) Plaintiff could have sought inclusion of the Clifton Springs hospital records or assistance from the ALJ to obtain it. This is harmful error because the ALJ concluded that Plaintiff was better than the record indicates because the ALJ referred to one fewer suicide attempt and psychiatric hospitalization.

28. Given this failure to assist a pro se claimant, this case is **remanded**.

29. Plaintiff raises other objections (the ALJ's disregard of medical opinions in the record and the ALJ mischaracterized the record). On remand, the characterization of the record regarding the number of suicide attempts and resulting hospitalizations should be corrected.

30. The ALJ gave limited weight (R. at 56-57) to Dr. Tessena's April 2014 opinion (R. at 549) because the doctor's conclusion—that Plaintiff cannot obtain or maintain employment due to his PTSD—was vague and provided little insight into plaintiff's specific functional limitations. (R. at 56-57.) The ALJ found that this opinion also was inconsistent with the overall weight of evidence of record from Veterans Affairs which outlines in general normal mental status examinations. (R. at 57.)

31. Dr. Tessena of the Veterans Affairs Health Care wrote in its entirety:

"Randy Rohring (SS# . . .) is a patient under my care at the Canandaigua VA Medical Center. He is diagnosed with Post-traumatic Stress Disorder related to his combat service. I fine he is unable to obtain or maintain gainful employment due to his combat related PTSD. I have formed this opinion

10

based on my examination of him and review of his medical records at the VA."

(R. at 549.)

32. Given the remand for development of the record, this Court need not determine the sufficiency of Dr. Tessena's opinion and the appropriate reliance the ALJ should give it.

33. Plaintiff should be afforded the opportunity to develop the record to assist the Commissioner in making that determination. This matter is **remanded**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	June 23, 2020
	Buffalo, New York


					s/William M. Skretny
					WILLIAM M. SKRETNY
					United States District Judge